FILED
2016 Jul-14  AM 09:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| REGIONS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:14-cv-01625-SGC |
| | ) | |
| COMMONWEALTH LAND | ) | |
| TITLE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

This breach of contract action arises from a title agent's failure to record a mortgage following the closing of a mortgage refinance loan. Plaintiff Regions Bank ("Regions") financed the loan and asserts a breach of contract claim against Defendant Commonwealth Land Title Insurance Company ("Commonwealth") based on the title agent's alleged breach of the closing protection letter. (*See* Doc. 1). Commonwealth seeks summary judgment on Regions' claim and asks this court to allow it to rely on its expert report, which it produced two weeks after its deadline for expert disclosures. (Docs. 15, 18 & 23). For the reasons discussed below, Commonwealth's motions are denied.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 25).

## I. FACTUAL BACKGROUND[2]

### A. The Underlying Loan

Carolee B. Langhorne borrowed $652,420 from Regions (the "Loan") to refinance investment property located at 22454 Front Beach Road, Panama City Beach, Florida (the "Florida Property").  (Doc. 1-4, p. 1; Doc. 7, p. 12 ¶¶ 5-6; Doc. 10, ¶¶ 5-6; Doc. 27-4, pp. 8-24).[3]  The Loan was intended to be secured by two properties:  (1) the Florida Property and (2) Ms. Langhorne's primary residence at 9490 Benchmark Lane, Cincinnati, Ohio (the "Ohio Property").[4]  (*See* Doc. 23-4, p. 24; *see also* Doc. 7, p. 12 ¶¶ 5-6; Doc. 10, p. 2 ¶¶ 5-6).  Regions required title insurance in connection with the closing on the Loan and specified Commonwealth as the title insurance underwriter.  (*See* Doc. 28-3, p. 5; Doc. 28-2, p. 2 ¶ 1).  Professional Title & Escrow, L.L.C. ("Professional Title") served as Commonwealth's policy issuing agent for the closing.  (Doc. 28-2, p. 3 ¶ 3).

---

[2] To the extent any factual inferences are drawn, they are drawn in favor of Regions, the non-movant.

[3] All citations to the record refer to document and page numbers as assigned by the court's electronic filing system.

[4] Regions asserts that it required the Ohio Property secure the loan in addition to the Florida Property because it "has determined that borrowers like [Ms.] Langhorne who were speculating in real estate for investment purposes were more likely to continue to make timely loan payments when required to pledge their home as collateral." (Doc. 28, p. 17; *see also* Doc. 1, p. 3 ¶¶ 8-11). Regions also asserts it would not have made the Loan to Ms. Langhorne unless it was secured by the Ohio Property.  (Doc. 28, p. 18; *see also* Doc. 1, pp. 3-4 ¶ 13).

### B.  The Title Commitment and Closing Protection Letter

Before the Loan closed, Commonwealth issued a title insurance commitment, indicating its willingness to insure Regions' interest in the Florida Property.  (*See* Doc. 28-9).  Also before closing the Loan, Professional Title obtained a title report on the Ohio Property, which showed it was not encumbered by any mortgages or liens.  (Doc. 28-2, p. 3 ¶ 2; Doc. 28-10, p. 2).  Additionally, Commonwealth issued a closing protection letter addressed to Regions and dated April 25, 2007 (the "CPL"), which stated in pertinent part:

> When title insurance of Commonwealth [] is specified for your protection in connection with closings of real estate transactions in which you are to be . . . a lender secured by a mortgage (including any other security instrument) of an interest in land, Commonwealth [], subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by said Issuing Agent [] when such loss arises out of:

> 1. Failure of said Issuing Agent [] to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document . . . , or

> 2. Fraud or dishonesty of said Issuing Agent . . . .

> CONDITIONS AND EXCLUSIONS

> [ . . . ]

3

C.   Any liability of Commonwealth [] for loss incurred by you in connection with closings of real estate transactions by said Issuing Agent [] shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of Commonwealth []. The dollar amount of liability hereby incurred shall not be greater than the amount of the title insurance binder commitment or policy to be issued, and liability hereunder as to any particular loan transaction shall be coextensive with liability under the policy issued to you in connection with such transaction.   Payment in accordance with the terms of this letter shall reduce by the same amount the liability under such policy and payment under such policy shall reduce by the same amount of Commonwealth['s] liability under the terms of this letter.

(Doc. 23-2, pp. 1-2).[5]

## C.   Regions' Loan Closing Instructions

Regions sent specific loan closing instructions dated April 27, 2007, to Professional Title regarding the Loan closing, which included instructions requiring Professional Title to take actions to ensure Regions would have an enforceable first priority mortgage on both the Florida and Ohio Properties.   (*See* Doc. 28-3).   Among the specific loan closing instructions were the following:

You are required to meet all other terms and conditions in these loan closing instructions and meet all applicable local, state and FHA, VA, FNMA, FHLMC requirements to provide Lender with a marketable and valid first lien loan.

[ . . . ]

Regions [] is providing the note, security instrument, addendums and riders, as applicable.   . . .   All documents must be ERROR FREE with

---

[5] Florida law requires title insurers to use a form closing protection letter for real estate transactions in Florida, and the CPL in this case tracks the language of a Florida form closing protection letter.  *See* Fla. Stat. § 627.786(3); Fla. Admin. Code R. 69O-186.010.

4

no evidence of corrections and should be payable to Regions Bank d/b/a Regions Mortgage.  If you should find errors on the documents, please call the contact listed on page one of these instructions.

[ . . . ]

GENERAL REQUIREMENTS:  DO NOT DISBURSE THIS LOAN UNTIL YOU HAVE SATISFIED YOURSELF THAT ALL OF THE FOLLOWING CONDITIONS AND/OR REQUIREMENTS HAVE BEEN MET. . . .

General Requirements – (The following documents and/or conditions must be completed prior to funding).  [ . . . ]

[] Security Instrument must be recorded in all counties/states since multiple properties to be secured as collateral for this loan are in different jurisdictions.

[ . . . ]

[Title Insurance] Policy must be in favor of Regions Bank d/b/a Regions Mortgage, its Successors and Assigns, as their interest may Appear.  . . .  Title Policy should be issued in an amount equal to maximum principal balance of loan and must insure our Security Instrument in a first and superior lien position. [ . . . ]  Final title Policy [] shall be delivered within two [] weeks after closing.

(Doc. 1-4, pp. 1 & 3) (emphasis in original).  Regions also sent a letter of instruction with general closing instructions to Professional Title, which provided in part as follows:

If the closing attorney/agent determines that a loan cannot be closed in accordance with our closing instructions (including title policy and other requirements), the closing attorney/agent should not proceed to closing without further instructions . . . .

5

You must not disburse the loan proceeds until all requirements set forth in the General Closing Instructions and Specific Closing Instructions have been met.

[ . . . ]

Prior to recordation of any documents, regardless of who prepared them, you must check them for errors and/or omissions and have them properly corrected/completed. PLEASE TAKE PARTICULAR CARE WHEN REVIEWING A NOTE, MORTGAGE . . . .

(Doc. 28-12, pp. 2 & 14) (emphasis in original).

### D. **Professional Title's Failure to Record the Mortgage**

On April 27, 2007, Professional Title closed the Loan, and Ms. Langhorne executed a mortgage in favor of Regions, which was to be secured by both the Florida and Ohio Properties (the "Mortgage").[6]  (*See* Doc. 23-4, pp. 8-10 & 24; *see also* Doc. 7, p. 12 ¶¶ 5-6; Doc. 10, p. 2 ¶¶ 5-6).  Contrary to Regions' written loan closing instructions, however, Professional Title failed to record the Mortgage in either Florida or Ohio.  (Doc. 28-2, p. 3 ¶¶ 3 & 5; *see also* Doc. 7, p. 12 ¶ 7; Doc. 10, p. 2 ¶ 7).  Additionally, a final title insurance policy was not issued at the time of the closing.  (*See* Doc. 28-4, p. 1).

### E. **Regions' Claim to Commonwealth**

Regions discovered Professional Title's failure to record the Mortgage after Ms. Langhorne defaulted on the Loan.  (*See* Doc. 28, pp. 10-11 ¶ 11; Doc. 31, p. 3 ¶ 11).  Following that discovery, Regions submitted a claim to Commonwealth

---

[6] The Mortgage was a Florida form mortgage.  (Doc. 23-4, p. 8).

under the terms of the CPL and title insurance commitment.  (Doc. 28-4; Doc. 28-13, p. 2).  In the letter regarding its claim, Regions notified Commonwealth of Professional Title's failure to record the Mortgage and provide it with a final title insurance policy.  (Doc. 28-4, p. 1).

### F. The Title Insurance Policy

After receiving Regions' claim, Commonwealth issued a lender's policy of title insurance, Policy No. 30245135CA (the "Title Policy"), to Regions Bank in the amount of $800,000 with an effective date of April 27, 2007.  (*See* Doc. 23-3; Doc. 28, p. 11 ¶ 14; Doc. 31, p. 4 ¶ 14).  Consistent with the title insurance commitment, the Title Policy references only the Florida Property.  (*See* Doc. 23-3, p. 2; Doc. 28-9).  The Title Policy includes the following provisions:

> [Commonwealth] shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured.  [Commonwealth] may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy.  If [Commonwealth] shall exercise its rights under this paragraph, it shall do so diligently.
>
> [ . . . ]
>
> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
>
> [ . . . ]

7

> Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(Doc. 23-3, pp. 5 & 6).

### G. Commonwealth's Response to Regions' Claim

On January 4, 2011, Commonwealth agreed to provide coverage to Regions for its claim, and Commonwealth retained counsel to cure Professional Title's failure to record the Mortgage. (*See* Doc. 28-2, p. 5 ¶ 13; Doc. 28-13, p. 2). Commonwealth initiated litigation on behalf of Regions in both Florida and Ohio to establish the Mortgage as the first-lien priority on the Florida and Ohio Properties. (*See* Doc. 23-4; Doc. 28-13, pp. 2-3).

In the Florida litigation, Commonwealth obtained a judgment on behalf of Regions "entitling Regions to an equitable lien on the Florida Property in the amount of $322,290.18." (Doc. 23-4, pp. 1-2; Doc. 28-5, p. 6). Regions then foreclosed its interest in the Florida Property, and following the foreclosure, it sold the Property to a third party for $187,476.92. (Doc. 7, p. 13 ¶¶ 14-15; Doc. 10, p. 3 ¶¶ 14-15).

In the Ohio litigation, Commonwealth could not establish Regions' first-priority lien against the Ohio Property; the trial court in Ohio found another lien

for $592,649.65 had priority over the Mortgage.[7]  (Doc. 7, p. 13 ¶ 16; Doc. 10, p. 3 ¶ 16; Doc. 28-13, p. 3).  Commonwealth did not appeal the trial court's decision.[8] (Doc. 28-2, p. 5 ¶ 15; Doc. 28-6, p. 2).

Following the litigation in Florida and Ohio, Regions demanded Commonwealth indemnify it for its actual loss pursuant to the terms of the CPL. (Doc. 28-13, pp. 3-4).  Regions asserts the actual loss caused by Professional Title's failure to record the Mortgage is $737,882.79, which it claims is equal to the total debt due on the Loan less the amount it received from the sale of the Florida Property.  (*See id.*).  Commonwealth denied it owes Regions the amount demanded and instead tendered $260,000 to Regions, which represents the value of the Ohio Property as of the date the Ohio trial court entered its adverse judgment against Regions.[9]  (Doc. 28-6, p. 2).  This action followed.

---

[7] After she defaulted on the Loan, Ms. Langhorne granted a lien on the Ohio Property to her father in the amount of $592,649.65.  (Doc. 28, p. 11 ¶ 12; Doc. 31, p. 3 ¶ 12).

[8] After entry of the adverse judgment against Regions, Ms. Langhorne filed a Chapter 7 bankruptcy petition.  (Doc. 28-6, p. 3).  Regions was named as an unsecured creditor in the bankruptcy, and the debt was discharged on June 19, 2012.  (Id.).

[9] Regions accepted the $260,000 from Commonwealth with Commonwealth's express stipulation the acceptance did not act as a waiver of Regions' claims against it.  (Doc. 28-7).

## II. <u>ANALYSIS</u>

### A. <u>Commonwealth's Motion for Summary Judgment</u>

At the heart of this case is a dispute over the protections provided by the CPL.  Regions argues Commonwealth breached the CPL by refusing to indemnify it for its actual losses following Professional Title's failure to record the Mortgage against the Florida and Ohio Properties.  Commonwealth counters by arguing it fulfilled its obligations to Regions under both the CPL and Title Policy and, therefore, did not breach the CPL.  Commonwealth now moves for summary judgment on Regions' breach of contract claim.  For the reasons discussed below, the court finds Commonwealth is not entitled to summary judgment and Regions' breach of contract claim may proceed.[10]

#### 1.  Summary judgment standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

---

[10] Because Commonwealth's motion for summary judgment is due to be denied, the court does not address Regions' Rule 56(d) affidavit attesting it needs additional discovery to fully respond to Commonwealth's contentions Regions' closing instructions were impossible to follow and it timely paid Regions all losses due.  (*See* Doc. 28-1).

that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment always bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  If the moving party does not meet its initial burden, then the Court must deny the motion for summary judgment.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).

Once the moving party has met its burden, then the non-moving party must "go beyond the pleadings" and point to specific facts in the record to show there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324 (citation omitted).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curium) (quoting *Anderson*, 477 U.S. at 249).  The court must "examine the evidence in the light most favorable to the non-moving party," drawing all inferences in favor of such party.  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).  Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to

11

resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citation omitted).  Finally, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### 2.  Summary of law regarding closing protection letters

Closing protection letters are considered indemnification contracts under Florida law, and Florida courts have defined them as "an agreement between [a] title insurance underwriter and [a] lender that the lender may rely on to ensure it will be reimbursed for the misconduct of the title insurance underwriter's agent during the closing."[11]   *F.D.I.C. v. Property Transfer Service, Inc.*, 2013 WL 5535561, *4 (S.D. Fla. Oct. 7 2013) (citing *Fito v. Attorney's Title Ins. Fund, Inc.*, 83 So.3d 755, 757 n.2 (Fla. Dist. Ct. App. 2011)); *see also Regions Bank v. Stewart Title Guar. Co.*, 2015 WL 433486, *5 (D.S.C. Feb. 3, 2015) (citing *F.D.I.C. v.*

---

[11] As a federal court sitting in diversity, the court must apply the choice of law principles of Alabama, the forum state.  *St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir. 2009) (citation omitted).  Absent a provision in a contract specifying which law governs, Alabama applies the law of the state where the contract was formed to contract disputes.  *See id.*; *Cherokee Ins. Co. v. Sanches*, 975 So.2d 287, 292 (Ala. 2007).  The CPL was issued by a title insurer in Florida for a loan closing that occurred in Florida, and the Title Policy was issued in Florida with Florida modifications.  (*See* Doc. 23-2, p. 2; Doc. 23-3, p. 1).  Accordingly Florida law will apply in this case.

*Prop. Transfer Services, Inc.*, 2013 WL 11328249 (S.D. Fla. May 15, 2013)). Title insurance underwriters provide CPLs to lenders in part to persuade the lenders to buy their title insurance policies. *See JPMorgan Chase Bank v. First Am. Title Ins. Co.*, 750 F.3d 573, 579 (6th Cir. 2014) (citing *New Freedom Mortgage Corp. v. Globe Mortgage Corp.*, 761 N.W. 2d 832, 842-43 (Mich. App. 2008)). "Therefore, the purchase of the title insurance forms the basis of consideration for the CPL contract." *F.D.I.C. v. Attorneys' Title Ins. Fund, Inc.*, 2014 WL 4384270, *4 (S.D. Fla. Sept. 3, 2014) (citing *JPMorgan Chase Bank*, 750 F.3d at 579).

Although CPLs are issued incidentally to title insurance policies, they protect a lender against different risks. *See Regions Bank v. Stewart Title Guar. Co.*, 2015 WL 433486, *5 (D.S.C. Feb. 3, 2015) (citing Joyce D. Palomar, Title Insurance Law § 20:19 (2014-15 ed.)). "[T]itle insurance protects against defects in title, while a CPL protects against the closing agent's fraud, dishonesty, or failure to follow instructions." *Regions Bank*, 2015 WL 433486 at *6. *See also Attorneys' Title Ins. Fund, Inc.*, 2014 WL 4384270 at *4. Accordingly, numerous courts have recognized a title insurer's obligations under a CPL are distinct from its obligations under a title insurance policy. *See Regions Bank*, 2015 WL 433486 at *5; *Attorneys' Title Ins. Fund, Inc.*, 2014 WL 4384270 at *4; *F.D.I.C. v. Property Transfer Services, Inc.*, 2013 WL 5535561, *10-11 (S.D. Fla. Oct. 7, 2013), aff'd, 611 Fed. Appx. 522 (11th Cir. 2015).

3.  <u>Fraud or dishonesty by the policy-issuing agent is not required to trigger Commonwealth's obligations under the CPL.</u>

Commonwealth argues it is entitled to summary judgment on Regions' breach of contract claim in part because "there are no fraud or dishonesty allegations levied against [Professional Title]" and, "[c]onsequently, the damages provision provided for in the CPL is not triggered in this case."  (Doc. 23-7, p. 6; *see also* Doc. 31, pp. 6-8 ).  Commonwealth's argument is fatally flawed, however, based on the undisputed facts of this case and the language of the CPL.

Under the clear terms of the CPL, Commonwealth agreed to reimburse Regions for its actual losses incurred in connection with a closing conducted by Commonwealth's issuing agent "when the loss arises out of:

(1) Failure of [the] Issuing Agent [] to comply with [Regions'] written closing instructions to the extent that they relate to . . . the validity, enforceability and priority of the lien of [the] mortgage on [the] interest in land . . . , <u>or</u>

(2) Fraud or dishonesty of [the] Issuing Agent [] in handling your funds or documents in connection with [the] closing[]."

(Doc. 23-2, p. 1) (emphasis added).  Commonwealth does not acknowledge the first clause quoted above and instead focuses its arguments solely on the second clause regarding fraud or dishonesty by the issuing agent.  (*See* Doc. 23-7, pp. 5-8; Doc. 31, pp. 6-8).  Commonwealth's refusal to acknowledge the actual language of the CPL does not change the impact of the language.  Because the two triggers for liability under the CPL are joined by the conjunction "or," neither fraud nor

14

dishonesty is required for Commonwealth to be liable under the CPL. (*See* Doc. 23-2, p. 1). Instead, Commonwealth may also be liable if Professional Title, its policy-issuing agent, failed to comply with Regions' written closing instructions to the extent those instructions relate to the validity, enforceability and priority of the Mortgage. (*See id*.).

Commonwealth admits Professional Title "mistakenly, or even negligently, failed to record the [M]ortgage in the proper counties in Ohio and Florida." (Doc. 23-7, pp. 1 & 6). Accordingly, there is no dispute Commonwealth's agent failed to follow Regions' written closing instructions, which required Professional Title to "meet all applicable . . . requirements to provide [Regions] with a marketable and valid first lien loan" and specifically informed the agent the Mortgage "must be recorded in all counties/states since multiple properties to be secured as collateral for this loan are in different jurisdictions." (Doc. 28-3, pp. 2 & 4). Moreover, those written instructions clearly relate to the validity, enforceability and priority of the lien of the Mortgage. As a result, Commonwealth may be liable to Regions under the CPL even though there are no allegations of fraud or dishonesty by Professional Title.

Likewise, nothing in the terms of the CPL limits Commonwealth's liability under the CPL to cases involving sham transactions, forgeries, or straw buyers. (*See* Doc. 23-2, p. 1-2). Accordingly, Commonwealth may be liable under the

15

terms of the CPL even though there was no sham transaction, forgery, or straw buyer in this matter.

Based on the clear terms of the CPL and the undisputed facts of this case, Commonwealth is not entitled to summary judgment on Regions' breach of contract claim simply because there are no allegations of fraud or dishonesty by Professional Title or because the loan transaction at issue did not involve a sham transaction, forgery, or straw buyer.

4. Regions' claim is not limited to the Title Policy

Commonwealth also argues it is entitled to summary judgment on Regions' breach of contract claim because Regions' recovery is limited to the terms of the Title Policy. (Doc. 23-7, pp. 6-9; Doc. 31, pp. 8-10). Specifically, Commonwealth asserts "the court must look to the Policy for its calculation of damages" because liability under the CPL is coextensive with liability under the Title Policy. (Doc. 23-7, pp. 6-7; Doc. 31, pp. 8-9). Once again, Commonwealth's argument fails based on the language of the CPL.

Commonwealth's argument relies upon paragraph C in the CPL's conditions and exclusions, which states in full as follows:

> Any liability of Commonwealth [] for loss incurred by [Regions] in connection with closings of real estate transactions by [Professional Title] shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of Commonwealth []. The dollar amount of liability hereby incurred shall not be greater than the

16

amount of the title insurance binder, commitment or policy to be issued, and liability hereunder as to any particular loan transaction shall be coextensive with liability under the policy issued to [Regions] in connection with such transaction.  Payment in accordance with the terms of this letter shall reduce by the same amount the liability under such policy and payment under such policy shall reduce by the same amount of Commonwealth['s] liability under the terms of this letter.

(Doc. 23-2, p. 2).  Commonwealth asserts that because liability under the CPL is coextensive with liability under the Title Policy, the court must look to the terms of the Title Policy to determine Regions' damages and to determine Commonwealth's liability under the CPL.  But that interpretation is belied by the rest of Paragraph C, which mandates that Commonwealth's liability for a loss incurred by Regions in connection with the Loan closing is limited to the protection provided by the CPL and contemplates potential payments under both the CPL and the Title Policy. (*See* Doc. 23-2, p. 2).

Another reasonable interpretation of the statement that liability under the CPL shall be coextensive with liability under the Title Policy is that, as clarified by the next sentence in Paragraph C, the amount of Commonwealth's potential liability under the Title Policy for any particular loan transaction is reduced by any amount Commonwealth pays to Regions under the CPL in connection with that transaction, and vice versa.  Because there is more than one interpretation of the CPL's statement that liability under the CPL is coextensive with liability under the Title Policy, Commonwealth is not entitled to summary judgment on Regions'

17

breach of contract claim.  *See CEM Enterprises, Inc. v. State of Florida, Dep't of Transp.*, 868 So. 2d 674, (Fla. Dist. Ct. App. 2004) ("Where the terms of the written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment.") (quoting *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. Dist. Cit. App. 2001)).

> 5. <u>Commonwealth is not entitled to summary judgment on the grounds it has already paid Regions for its only damages in this matter</u>

Commonwealth argues it is entitled to summary judgment because Regions' only damages in this case are "the failure to have an enforceable lien against the Ohio Property" and Commonwealth has already paid Regions for the value of the Ohio Property.  That argument also fails.  (*See* Doc. 23-7, pp. 6, 8-9; Doc. 31, 10-12).  Under the CPL, Commonwealth is liable for Regions' actual loss arising from Professional Title's failure to follow Regions' written closing instructions.  (Doc. 23-2, p. 1).  Commonwealth asserts Regions' only loss arising from its agent's failure to follow the loan closing instructions was the lack of a first-priority lien on the Ohio and Florida Properties, while Regions contends its actual loss from the failure is the amount of the outstanding loan balance less the amount it recovered for the Properties.  (*See* Doc. 28-11; Doc. 28-13).

The Eleventh Circuit recently addressed the measure of a lender's actual loss arising from a title agent's dishonesty and failure to follow the lender's loan closing instructions in *F.D.I.C. v. First American Title Insurance Company*, 611 Fed. Appx. 522 (11th Cir. 2015).   *First American* involved the sale of two properties in Florida for which First American, a title insurer, issued CPLs and title insurance policies.   *Id.* at 524-25.   The lender for the transactions specifically instructed First American's title agent to ensure the buyer made the down payments on the properties with his own funds, but the agent failed to do so.   *See id.* at 525.   Instead, an entity with a connection to the sellers provided the down payments, and the buyer was a straw buyer who quickly defaulted on the loans.   *Id.* The lender foreclosed on the properties but only recovered a fraction of the outstanding loan balances in the foreclosure sales.   *Id.* at 526.   After acquiring the CPLs from the lender, the FDIC asserted a breach of contract claim against First American under the CPLs based on the title agent's failure to follow a lender's loan closing instructions and the agent's fraud or dishonesty.   *Id.* at 525-26; *see also Prop. Transfer Services, Inc.*, 2013 WL 5535561, \*1.

Similar to Commonwealth's argument in this case, First American argued the FDIC could not prove any actual damages arising from its agent's failure to follow instructions or dishonesty because "as a result of the closings, [the lender] received first-priority liens on both properties, successfully foreclosed on both

properties, and could have sought a deficiency judgment against the borrower." *Id.* at 532.  After noting the phrase "arising out of" requires only a "minimal causal relationship," the Eleventh Circuit rejected First American's argument and found that "[a]lthough [the lender] received a first-priority lien on each [property], [the lender] lacked the bargained-for benefit of an honest, diligent closing agent and a borrower both invested in the units and motivated to repay the loans." *Id.*  The Eleventh Circuit then held the measure of FDIC's actual loss arising from the title agent's failure or dishonesty is "the outstanding loan balance less the sales proceeds of the collateral property." *Id.* at 533.

Commonwealth urges the court to hold the Eleventh Circuit's ruling in *First American* does not apply in this matter because, unlike in *First American*, there are no fraud or dishonesty allegations in this case.  (Doc. 31, pp. 6-7).  The court's analysis in *First American* is not limited, however, to only cases involving fraud or dishonesty.  Indeed, the Eleventh Circuit noted the lender was deprived of a diligent closing agent and found the lender's actual loss had a minimal causal relation to the agent's failure to follow the loan closing instructions and the agent's dishonesty.[12]  *See* 611 Fed. Appx. at 532-33.  Thus, *First American* may apply to

---

[12] Additionally, in the district court decision affirmed by the Eleventh Circuit in *First American*, the Southern District of Florida noted First American had an indemnification obligation under the CPL if its agent either "failed to comply with the Closing Instructions or [] committed dishonesty. . . ."  2013 WL 5535561 at *9

cases, like this one, involving a title agent's failure to follow the lender's loan closing instructions and not just to cases involving fraud or dishonesty.

Here, Regions contends it required a security interest in both the Florida and the Ohio Properties in exchange for the Loan because a borrower is more likely to repay a loan if she is required to pledge her home as collateral and contends it would not have made the Loan to Ms. Langhorne if she did not pledge her home in Ohio as collateral. (Doc. 1, p. 3¶¶ 8-11; Doc. 28, p. 17). Based on Regions' instructions directing Professional Title to record the Mortgage in both Florida and Ohio, Regions expected to have a borrower who would be motivated to make timely loan payments in order to avoid losing her home. (*See* id). Regions argues that by failing to record the Mortgage in both states, Professional Title deprived it of a borrower who was motivated to repay the Loan. (*See* Doc. 28, pp. 17-18).

Regions' arguments show there is a question of fact regarding its actual losses arising from Professional Title's failure to follow its loan closing instructions. As a result, Commonwealth is not entitled to summary judgment on Regions' breach of contract claim on the grounds Regions has no actual losses arising from Professional Title's failure to follow the closing instructions.

      6.  <u>Commonwealth is not entitled to summary judgment on the grounds Regions' closing instructions were impossible to follow</u>

Finally, Commonwealth argues it cannot be liable under the CPL because it would have been impossible for the Mortgage to be recorded in both Florida and

Ohio.  (Doc. 23-7, pp. 9-10).  This argument also fails because Regions' specific closing instructions prohibited Professional Title from disbursing the loan funds until the Mortgage was "recorded in all counties/states" and its general closing instructions directed Professional Title not to proceed to closing if it "determines that a loan cannot be closed in accordance with [Regions'] closing instructions." (Doc. 28-3, p. 4; Doc. 28-12, p. 2).  Thus, even if it would have been impossible for Professional Title to record the Mortgage in both Florida and Ohio, it still did not follow Regions' written closing instructions by closing the Loan and disbursing the Loan proceeds without recording the Mortgage as instructed.

Commonwealth argues the CPL did not require its agent to review the Mortgage to determine if it was proper and could have been recorded in Florida and Ohio, but that argument falls flat.  (*See* Doc. 31, pp. 12-13).  The CPL distinguishes between Regions' instructions relating to documents that are necessary to establish the validity, enforceability and priority of the lien, such as the Mortgage, and instructions relating to other documents specifically required by Regions.  (*See* Doc. 23-2, p. 1).  Specifically, the CPL provides that Commonwealth is liable to Regions for losses arising out Professional Title's failure to comply with Regions' written closing instructions relating to:

> (a) . . . the validity, enforceability and priority of [] [the] [M]ortgage
> . . . , including the obtaining of documents . . . necessary to establish
> such status of [the] lien, or

> (b) the obtaining of any other document specifically required by you, <u>but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document</u>....

(Doc. 23-2, p. 1) (emphasis added).  Commonwealth relies on the exclusion in the second clause above to argue its agent was not required to review documents prepared by Regions to determine if they are proper and enforceable.  (Doc. 31, p. 13).  However, the exclusion does not apply to documents like the Mortgage that are necessary to establish the validity, enforceability and priority of the lien.  (*See* Doc. 23-2, p. 1).   Rather, the exclusion applies only to other documents specifically required by Regions.   (*See* id.).   As a result, Commonwealth is not entitled to summary judgment on the grounds that it cannot be liable "for the review of Regions faulty loan documents . . . ."  (*See* Doc. 31, p. 13).

Commonwealth did not establish there are no genuine issues of material fact and it is entitled to a judgment as a matter of law on Regions' breach of contract claim.  Accordingly, its motion for summary judgment is due to be denied.[13]

## B. <u>Commonwealth's Motion for Leave to Submit Expert Report</u>

Commonwealth asks this court to grant it leave to submit its expert report from J. Bushnell Neilsen after its deadline for expert disclosures.  (Docs. 15 & 18).  Although Commonwealth disclosed Mr. Neilsen's identity on its expert disclosure deadline, it did not produce his expert report at that time.  (*See* Doc. 14; Doc. 15).

---

[13] Because Commonwealth did not satisfy its burden of showing it is entitled to summary judgment, the court need not and does not address Regions' argument there was no title insurance policy issued for the Ohio Property.  (*See* Doc. 28, pp. 14-15).

Rather, Mr. Neilsen's expert report was not produced until fifteen days later. (*See id.* & Doc. 18). Commonwealth asserts its delay is harmless; on the other hand, Regions argues it would be harmed if Commonwealth is allowed to rely on Mr. Neilsen's tardy report. (*See* Docs. 15, 16, 17 & 21).

    1. <u>Standard for expert disclosures and modifying a scheduling order</u>

Under Rule 26(a), a party's expert disclosure "must be accompanied by a written report," and the report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them . . . ." FED. R. CIV. P. 26(a)(2)(B). "Rule 26(a) expert reports must be 'detailed and complete,' they must not be sketchy, vague, or preliminary in nature." *United States v. Alabama Power Co.*, 274 F.R.D. 686, 688 (N.D. Ala. 2011). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (quotation omitted). When a party fails to comply with the disclosure requirements of Rule 26(a), "a district court clearly has authority to exclude an expert's testimony . . . unless the failure is substantially justified or is harmless." *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008) (citing FED. R. CIV. P. 37(c)(1) (emphasis in original omitted).

This court's December 10, 2014 Scheduling Order emphasized a party's obligation to produce a complete expert report with its expert disclosure, and set specific deadlines for the disclosure of expert witnesses:

> Unless modified by stipulation of the parties, the disclosures of expert witnesses—including a complete report under Fed. R. Civ. P. 26(a)(2)(B) from any specially retained or employed expert—are due:
>
> From [Regions] by February 2, 2015
>
> From [Commonwealth] by March 2, 2015.[14]

(*See* Doc. 14, p. 1 ¶ 3).   The court entered the Scheduling Order under Federal Rule 16(b), which provides that "[a] schedule may be modified only for good cause and with the judge's consent."   FED. R. CIV. P. 16(b)(4).   The Eleventh Circuit recognized "this good cause standard precludes modification [of a scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension."   *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1814 (11th Cir. 1998) (quotation omitted).

2.   <u>Discussion</u>

Regions argues Commonwealth's delay in submitting Mr. Nielson's expert report is not harmless because the report interjects new issues into this matter and contradicts Commonwealth's prior discovery responses and pleadings.   (Doc. 21, pp. 1-2).   After reviewing Mr. Nielsen's expert report, the court finds it injects new

---

[14] The deadlines for the parties' expert disclosures were based on the dates included in the parties' report of a planning meeting and the scheduling conference held on December 10, 2014. (*See* Doc. 11; Doc. 14, p. 1).

issues into the case by questioning whether Regions' closing instructions required Professional Title to record the Mortgage in Ohio, thereby contradicting a fact Commonwealth previously admitted.  (*See* Doc. 18-1, pp. 11-20; Doc. 21-3, pp. 3-4, ¶ 7).

In response to Regions' requests for admission, Commonwealth admitted Regions required the Mortgage to be recorded in both Florida and Ohio.  (Doc. 21-3, pp. 3-4, ¶ 7).  Based on Commonwealth's admission and prior pleadings, Regions had no notice Commonwealth may defend against Regions' claim by asserting the closing instructions might not have required Professional Title to record the Mortgage in Ohio.  Therefore, Regions did not conduct any discovery directed towards such a defense.  Regions had a right to rely upon facts admitted by Commonwealth, *see* FED. R. CIV. P. 36(b), and allowing Commonwealth to expand the issues in this case at such a late date by contradicting facts it previously admitted would cause harm to Regions.

Additionally, Commonwealth has not shown good cause for modifying the court's Scheduling Order.  Indeed, Commonwealth offered little to suggest it was diligent but still could not meet the court's deadline for its expert disclosure. Instead, Commonwealth essentially argued it could not meet its expert disclosure deadline because Mr. Nielsen is busy and his services are in high demand.  (*See* Doc. 15, pp. 1-3).  But, those are issues Commonwealth could have easily

anticipated, and an expert's busy schedule is by itself not sufficient to show diligence and establish good cause for modifying the Scheduling Order. Therefore, Commonwealth did not meet the standard to justify modifying the Scheduling Order in this case.

Because Commonwealth's failure to disclose its expert as required by the court's Scheduling Order and Rule 26(a)(2) was not substantially justified or harmless, Commonwealth cannot use Mr. Nielsen's expert report "to supply evidence on a motion, at a hearing, or at a trial" in this case. *See* FED. R. CIV. P. 37(c)(1). Additionally, Commonwealth did not show good cause for modifying the Scheduling Order. Accordingly, Commonwealth's motion for leave to submit its expert report is due to be denied.

## III. CONCLUSION

Based on the foregoing, Commonwealth's motion for leave to submit its expert report (Docs. 15 & 18) is **DENIED**. Commonwealth's motion for summary judgment (Doc. 23) is **DENIED**, and Regions' breach of contract claim against Commonwealth will proceed.

**DONE** this 14th day of July, 2016.

*Staci G. Cornelius*

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE